IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAM WYLY, ET AL. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | NO. 3-04-CV-1984-B |
| VS. | § | |
| | § | (Consolidated With: |
| COMPUTER ASSOCIATES | § | No. 3-05-CV-0335-B) |
| INTERNATIONAL, INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendants Computer Associates International, Inc. and Sterling Software, Inc. have filed a motion to transfer this case to the Eastern District of New York. For the reasons stated herein, the motion is granted.

I.

Plaintiff Sam Wyly ("Wyly") is a Dallas investor who, together with others, founded Sterling Software, Inc. ("Sterling") in 1981. (Plf. First Am. Compl. at 3, ¶ 4). Wyly served as Chairman of the Sterling Board of Directors and helped build the company from a small Texas start-up operation into a highly successful, multi-billion dollar business. (*Id.* at 4, ¶ 8). In March 2000, Computer Associates International, Inc. ("CAI"), a worldwide provider of computer management software headquartered in Islandia, New York, acquired Sterling in exchange for approximately $4 billion in stock and stock options. (*Id.* at 3, ¶ 6 & 6, ¶¶ 15-16). Upon completion of the merger, Wyly and various members of his family exchanged their Sterling stock for CAI stock. (*Id.* at 6, ¶ 16).

On July 3, 2000, just three months after the Sterling acquisition, CAI announced it would not meet earnings expectations. (*Id.* at 6, ¶ 18). The next business day, CAI stock plummeted from

$51.13 per share to $29.50 per share, a 42% drop that reduced its market value by over $12 billion. (*Id.* at 6-7, ¶ 18). This caused the Wyly family to lose tens of millions of dollars in a single day. (*Id.* at 7, ¶ 19). Frustrated by this development and his overall dissatisfaction with the management of CAI, Wyly founded Ranger Governance, Ltd. ("Ranger"), a Texas limited partnership, to promote good corporate governance practices in publicly-held corporations. (*Id.* at 3, ¶ 5 & 7, ¶ 21). Wyly and Ranger then mounted two different proxy challenges to the CAI Board of Directors. CAI defeated the first proxy contest in June 2001. (*Id.* at 7-8, ¶¶ 21-23). The second proxy fight, initiated in June 2002, was resolved by agreement (the "2002 Settlement Agreement"). (*Id.* at 11, ¶ 34; *see also* Def. App., Exhs. A-3 & A-4). As part of the settlement, CAI agreed to reform certain corporate governance practices, including upgrading its accounting controls to a "gold standard" and electing an independent director to act as a watchdog for CAI shareholders. (*See* Plf. First Am. Compl. at 10, ¶ 32; Def. App. at 47, ¶ 4). In return, Wyly and Ranger agreed to drop their proxy challenge, refrain from soliciting proxies for a period of five years, and not make any disparaging or derogatory statements about CAI or its officers and directors. (Def. App. at 45-47, ¶¶ 2-3).[1] Both the 2002 Settlement Agreement and an amendment subsequently executed by the parties specifically provide that any disputes arising thereunder shall be governed by New York law. (*Id.* at 44, 50).

Wyly and Ranger were not the only ones troubled by the conduct of CAI executives. In 2002, federal prosecutors in the Eastern District of New York initiated a criminal investigation focusing on fraudulent accounting practices allegedly used by the company in the late 1990s. (Plf. First Am. Compl. at 8, ¶ 24). In April 2004, while this investigation was still ongoing, CAI admitted to various improprieties with respect to its accounting practices, including overstating revenue by

---

[1] Wyly also received a lump-sum payment of $10 million as part of the settlement. (*See* Def. App. at 42).

$2.2 billion on its 2000 and 2001 financial statements. (*Id.* at 13, ¶ 40).[2] As a result of these disclosures, Wyly and Ranger now believe that the 2002 Settlement Agreement resolving their proxy contest was procured by fraud. (*Id.* at 2 & 9-11, ¶¶ 30-35).

On June 7, 2004, William A. Brewer III, counsel for Ranger, wrote to CAI asking for information, assistance, and cooperation in an investigation he planned to conduct, purportedly on behalf of CAI, which might lead to the recovery of compensation paid to current and former executives dating back to 1995. (Def. App. at 52-55). In his letter, Brewer outlined potential claims against CAI officers for gross negligence, fraud and self-dealing, corporate waste, breach of fiduciary duty, conspiracy, and unjust enrichment. Brewer went on to suggest that CAI work with Ranger to investigate this wrongdoing and pursue a civil action against the responsible parties. (*Id.* at 53). When CAI failed to respond to Brewer's letter, Ranger filed a derivative action on behalf of the company in the United States District Court for the Eastern District of New York seeking to recover more than $1.1 billion in salaries and performance bonuses paid to CAI executives based on false performance figures. (*See id.*, Exh. A-8).[3] That action, which has been consolidated with two other shareholder derivative suits, is currently pending in New York federal court. *In re Computer Associates International, Inc. Derivative Litigation*, No. 04-CV-2697.

On June 30, 3004, the day after Ranger filed its derivative action in New York, counsel for CAI notified Brewer that his June 7, 2004 letter, which was released to the press, constituted a

---

[2] On September 22, 2004, CAI resolved potential criminal charges involving the use of improper accounting practices by entering into a deferred prosecution agreement with the federal government. As part of the agreement, CAI admitted, *inter alia*, that its executives, officers, and employees made false and misleading statements in certain financial reports and other public documents and accepted full responsibility for such conduct. (*See* Plf. First Am. Compl. at 16, ¶¶ 51-52). CAI also agreed to cooperate with the government in prosecuting its former executives, including Sanjay Kumar and Stephen Richards. Criminal charges against Kumar and Richards are currently pending in the Eastern District of New York. *United States v. Kumar, et al.*, No. 04-CR-846.

[3] The complaint filed in the New York action alleges that Ranger acquired an unspecified number of shares of CAI stock in 2001. (Def. App. at 62, ¶ 5). However, no such evidence has been presented to this court.

breach of Ranger's obligations under the 2002 Settlement Agreement. (Def. App. at 56). This prompted Wyly and Ranger to file a declaratory judgment action against CAI and Sterling in Texas state court. In addition to declaratory relief, Wyly and Ranger also sue for fraud, breach of contract, and recision of the agreement. CAI and Sterling timely removed the case to federal court[4] and now seek a transfer of venue to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). The motion to transfer has been fully briefed by the parties and is ripe for determination.

II.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this statute is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *DataTreasury Corp. v. First Data Corp.*, 243 F.Supp.2d 591, 593 (N.D. Tex. 2003) (Kaplan, J.) (citing cases). In ruling on a motion to transfer venue under section 1404(a), the court should consider various private interest factors, such as: (1) the availability and convenience of the witnesses and parties; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the cost of obtaining attendance of witnesses; (4) the relative ease of access to sources of proof; (5) the place of the alleged wrong; (6) the possibility of delay and prejudice if the case is transferred; and (7) the plaintiff's right to choose its forum. *Von Graffenreid v. Craig*, 246 F.Supp.2d 553, 562 (N.D. Tex. 2003) (Kaplan, J.) (citing cases). The "interest of justice" also is an important component of the transfer analysis. *Id.* Factors relevant to this determination include: (1) the pendency of related litigation in another forum; (2) delays due

---

[4] Federal jurisdiction is proper because plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

to docket congestion; (3) familiarity with the law that governs the action; and (4) the local interest in having localized controversies resolved at home. *Id.*, *citing* 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3854 at 439-41 (2d ed. 1986). The party seeking a change of venue must demonstrate that the balance of convenience and justice weighs heavily in favor of transfer. *Id.* (citing cases).

A.

The most compelling argument in favor of a transfer is the pendency of the New York derivative action. Indeed, a transfer of venue is particularly appropriate where related cases involving the same issues are pending in another court. *See DataTreasury Corp.*, 243 F.Supp.2d at 594. In *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), the Supreme Court observed:

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conductive to a race of diligence among litigants for a trial in the District Court each prefers.

*Id.*, 80 S.Ct. at 1474. Since *Continental Grain*, a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs strongly in favor of transfer. *See, e.g. Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528-29 (5th Cir. 1988); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986).

Both the New York derivative action and the instant case involve claims that CAI and its executive officers conspired to manipulate earning figures and artificially inflate the price of its stock. In the New York action, Ranger, purportedly on behalf of CAI, seeks to recover more than $1 billion in salaries and performance-based compensation paid to current and former executives

based on financial reports that were inflated due to improper accounting practices. (*See* Def. App. at 60 & 67-70, ¶¶ 20-40). The same accounting improprieties form the basis of plaintiffs' claims for fraud, breach of contract, and declaratory relief in the instant action. (*See* Plf. First Am. Compl. at 8, ¶¶ 24-26, 10, ¶ 33 & 12, ¶ 39). In an attempt to distinguish the two cases, plaintiffs argue that the New York derivative action focuses on widespread fraud at CAI, the wrongful conduct of certain officers and directors, and the damages to the company resulting therefrom, whereas the instant litigation involves the 2002 Settlement Agreement between plaintiffs and CAI. (*See* Plf. Resp. Br. at 24-25). This simplistic characterization all but ignores that both cases arise out of the same operative facts. Although the parties are not identical[5] and the relief sought is different, the claims advanced in both the New York action and the instant case are predicated on an elaborate scheme of fraud, deception, and malfeasance allegedly perpetrated by CAI executives dating back to at least 1998. (*See* Plf. First Am. Compl. at 15, ¶ 49; Def. App. at 72, ¶ 48).

"The interest of justice may dictate transfer 'to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues.'" *The Whistler Group, Inc. v. PNI Corp.*, No. 3-03-CV-1536-G, 2003 WL 22939214 at *5 (N.D. Tex. Dec. 5, 2003), *quoting General Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir.), *cert. denied*, 87 S.Ct. 1031 (1967). Such is the case here. The same allegations of conspiracy, accounting fraud, and corporate wrongdoing permeate the New York derivative action and the instant litigation. With lawsuits pending in two different forums, both the New York court and this court may be required to address

---

[5] Wyly is not a party to the New York derivative action. However, the court notes that Wyly filed a motion to set aside releases granted to certain CAI officers and directors in connection with the settlement of a related class action suit. That case also is pending in the Eastern District of New York. *In re Computer Associates Class Action Litigation*, No. 98-CIV-4839.

similar issues. In fact, this court already has deferred to the New York court in a discovery dispute that potentially impacts both cases.[6] Similar situations are likely to arise if the two cases are litigated in different forums. The court therefore concludes that the pendency of the New York action, while not dispositive, weighs heavily in favor of transfer.

B.

The strongest arguments against transfer are plaintiffs' choice of forum and the potential for delay due to docket conditions in the Eastern District of New York. Although the choice of forum is entitled to some weight, it is "neither conclusive nor determinative." *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir.), *cert. denied*, 124 S.Ct. 826 (2003). Rather, this factor must be considered along with the other private and public interest factors. *Id.*; *see also Shoemake v. Union Pacific Railroad Co.*, 233 F.Supp.2d 828, 830 (E.D. Tex. 2002). Moreover, the choice of forum becomes less important where the plaintiff has filed a similar action in another district. *DataTreasury Corp.*, 243 F.Supp.2d at 594. As previously noted, Ranger initiated the New York derivative action on behalf of CAI. This makes its choice of forum a less significant factor in the transfer analysis.

Plaintiffs correctly observe that docket conditions in the Eastern District of New York are far more congested than in the Northern District of Texas.[7] This favors retaining venue in this

---

[6] This discovery dispute arose when plaintiffs noticed CAI for a deposition. Both CAI and the government objected, citing the pending criminal prosecution in the Eastern District of New York. The court allowed plaintiffs to depose a CAI representative if the information sought could not be obtained through interrogatories, unless the New York court determined that CAI "is not subject to a FRCP 30(b)(6) deposition in connection with that proceeding." *See* Order, 7/22/05 at 2.

[7] Statistics maintained by the Administrative Office of the United States Courts for the 12-month period ending September 30, 2003 show that there were 10,325 cases pending in the Eastern District of New York, with an average of 688 cases per sitting judge. The average disposition time for a civil case in that district 10.5 months. (Plf. App. at 81). By contrast, there were 5,455 cases pending in the Northern District of Texas, with an average of 455 cases per sitting judge. The average disposition time for a civil case in this district was 7.2 months. (*Id.* at 80).

district. However, docket conditions, though relevant, are a minor consideration which the court must view in light of other relevant factors. *See Koh v. Microtek International, Inc.*, 250 F.Supp.2d 627, 639 (E.D. Va. 2003) (citing cases).

C.

The convenience of witnesses is often regarded as one of the most significant factors to be considered in deciding whether to transfer venue. *See Levy v. City of Rio Grande City*, No. 3-04-CV-0381-B, 2004 WL 2847273 at *3 (N.D. Tex. Dec. 9, 2004) (Kaplan, J.) (citing cases). In their initial disclosures, plaintiffs identified 28 individuals and seven entities who are likely to have discoverable information. (*See* Def. App. at 544-51). Twelve of those individuals and all seven entities are located in New York. Only six individuals identified by plaintiffs-- four of whom are either parties to this suit or current or former employees of Ranger or Sterling-- reside in Texas.[8] Plaintiffs attempt to bolster their claim of inconvenience by arguing that they lack the ability to compel several key third-party witnesses to travel to New York for trial. Among these potential witnesses are Sterling L. Williams, Don J. McDermett, Jr., Steven Perkins, Logan Wray, Richard J. Agnich, Mark Cuban, Cece Smith, Mark Hopper, and Ron Robinson. (*See* Plf. Resp. Br. at 9-12).[9] The court initially observes that the subject matter of their expected testimony--the facts and circumstances surrounding the acquisition of Sterling by CAI in 2000--is of questionable relevance to claims involving the 2002 Settlement Agreement between plaintiffs and CAI. Moreover, plaintiffs have failed to show that any of these witnesses would be unwilling to travel to New York. Even if the witnesses refuse to attend the trial in person, plaintiffs may present their testimony by

---

[8] The other 10 individuals either live in Massachusetts, California, or Washington, D.C., or their whereabouts were not disclosed.

[9] Only Williams, McDermett, and Perkins were identified by plaintiffs in their initial disclosures.

way of deposition. *See Levy*, No. 3-04-CV-0381-B, 2004 WL 2847273 at *3 (citing cases) (inconvenience to witnesses not a factor in the transfer analysis where party failed to explain why it could not effectively present testimony by videotaped deposition).

D.

None of the other private and public interest factors inform the court's decision on the transfer issue. It is no less convenient for plaintiffs to litigate this case in New York than for defendants to come to Texas. *See Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 826 (S.D. Tex. 1993) (transfer not appropriate where only justification is to shift balance of inconveniences from one party to another). If anything, this factor weighs slightly in favor of transfer as lead counsel for plaintiffs is located in New York. Relative ease of access to sources of proof neither favor transferring this case to the Eastern District of New York nor retaining venue in the Northern District of Texas. Although documents and records relating to the corporate governance and accounting practices of CAI are kept at its headquarters in New York, other documents, including evidence relating to the 2002 Settlement Agreement, are located in Texas. The place of the alleged wrong is, at best, as neutral factor. As defendants point out, the alleged wrongdoing on the part of CAI and its executives occurred in New York. But the effects of that conduct were experienced by plaintiffs in Texas. Neither party will be prejudiced if venue is transferred to another court because this lawsuit is in its early stages. *See Levy*, No. 3-04-CV-0381-B, 2004 WL 2847273 at *4. To the extent any court has a local interest in litigating this controversy, it would be the Eastern District of New York-- the district where a related criminal action is pending. Similarly, the 2002 Settlement Agreement is governed by New York law, a fact that weighs slightly in favor of transfer. *See Sargent v. Sun Trust Bank, N.A.*, No. 3-03-CV-2701-D, 2004 WL 1630081 at *5 (N.D. Tex. Jul. 20, 2004), *citing Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 946 (1964).

**CONCLUSION**

After carefully weighing the relevant case-specific factors, the court determines that the similarity of issues in this litigation and the New York derivative action warrant a transfer to the Eastern District of New York. No other private or public interest factors justify retaining venue in the Northern District of Texas. Accordingly, defendants' motion to transfer is granted.

SO ORDERED.

DATED: September 1, 2005.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE